Delores **SLONEKER**, Plaintiff,

v.

**ST. JOSEPH'S HOSPITAL**, also known as Sisters of Charity of Leavenworth, Kansas, a corporation, **Defendant.**

**Civ. A. No. 8615.**

United States District Court
D. Colorado.

Aug. 24, 1964.

Jack Levine and Peter L. Garrett, Denver, Colo., for plaintiff.

T. Raber Taylor, Denver, Colo., for defendant.

DOYLE, District Judge.

This matter is before the Court on the defendant's motion to dismiss for failure to state a claim.

The complaint contains two counts: In the first of these plaintiff alleges that she underwent a medical operation at defendant's hospital in Denver, Colorado; that the defendant or its agents, knew, or should have known, that it would be necessary to administer a blood transfusion to plaintiff during the course of the operation and that it did administer such a transfusion.

A further allegation is that the blood administered to plaintiff was not safe and was unwholesome in that it carried a virus which caused hepatitis, as a result of which plaintiff contracted a condition known as "serum hepatitis."

A further allegation is that there existed between the plaintiff and defendant at the time an implied warranty of wholesomeness and fitness with respect to the blood which was sold and administered to the plaintiff and that defendant has committed a breach of warranty.

The second claim is based upon the alleged negligence in subjecting plaintiff to a high risk of danger in connection with a blood transfusion, a risk involving her contracting a disease known as "serum hepatitis" as the result of the transfusion; that plaintiff was unaware of the danger inherent in a blood transfusion and that the defendant failed to warn her of the existence of the danger and thus violated its duty to her. There is also an allegation in the second claim indicating that plaintiff intends to rely on the doctrine of *res ipsa loquitur.*

I.

*Sufficiency of the Breach of Warranty Claim*

Defendant's contention as to the first claim is that it is predicated upon the existence of a sale and since the giving of a blood transfusion can not upon any hypothesis of fact or law be considered a sale, there can not be a breach of warranty and, therefore, it is on its face insufficient. Thus, the question posed is whether the furnishing of blood by a hospital for a transfusion during the course of an operation constitutes a sale which gives rise to an action for breach of warranty.

All of the cases which have been cited have rejected the idea that a blood transfusion constitutes a sale. They are summarized in an annotation in 59 A.L.R. 770, 777 wherein the author of the annotation notes that liability has been denied on the ground that in a blood transfusion service is the predominant factor and that the extra charge for the blood in no way indicates a sale but is merely an incidental feature of the services rendered.

The definitive case is Perlmutter v. Beth David Hospital, 308 N.Y. 100, 123 N.E.2d 792 (1954). Here the New York Court of Appeals concluded that the supplying of blood by the hospital was entirely subordinate to its paramount function of furnishing trained personnel and specialized facilities as part of the endeavor to restore plaintiff's health. In reaching this conclusion it was pointed out that the essence of the relationship between the hospital and patient is that the hospital undertakes to make available human skill and physical material to the patient in an effort to restore his health. The Court reasoned that the contract is clearly one for services and not divisible; that while a title to the blood may be transferred, this does not serve to make such transaction a sale; that where the transfer of profit is merely incidental to rendition of services it does not follow that there is a sale. One analogy cited was that of the painter

who contracts to paint a picture. This is said to be a contract for work, labor and services rather than a sale, even though the title to the canvas is actually transferred. Similarly, the furnishing of gravel for a highway does not in essence constitute a sale, but rather a contract to construct the highway. Other analogies cited included the example of the eye glass prescription which the Illinois Supreme Court held did not constitute a sale. See Babcock v. Nudelman, 367 Ill. 626, 12 N.E.2d 635. The opinion of the New York Court of Appeals discussed not only the blood transfusion, but also the administering of drugs and other products by the hospital, placing all of these in the same category, that is, as incidental to service. We need not consider the validity of the dicta that medicines and other items besides blood are strictly part of the service since the only question before us is whether the furnishing of blood as a part of operative procedures constitutes a sale.

As to that part of the opinion which deals with the matter before us, the conclusion is cogently set forth as follows:

"While determination, as to whether the essence of a particular contract is for the rendition of services or for the sale of property, may at times be troublesome and vexatious, there is no doubt that the main object sought to be accomplished in this case was the care and treatment of the patient. The supplying of blood by the hospital was entirely subordinate to its paramount function of furnishing trained personnel and specialized facilities in an endeavor to restore plaintiff's health. * * * The conclusion is evident that the furnishing of blood was only an incidental and very secondary adjunct to the services performed by the hospital and, therefore, was not within the provisions of the Sales Act. The fact that the treatment might have come from a physician, while the blood came from the hospital, is of no operative consequence; it is the transaction, regarded in its entirety, which must determine its nature and character. As long as it involves the medical care and treatment of a patient at a hospital, it is immaterial that it is the doctor who may diagnose and treat and the hospital which may supply facilities and material." Perlmutter v. Beth David Hospital, 123 N.E.2d 792, at 795.

Perlmutter was followed by the Supreme Court of Washington in Gile v. Kennewick Public Hospital District, 48 Wash.2d 774, 296 P.2d 662, 59 A.L.R.2d 761. After citing the Perlmutter opinion at length, the Washington Court held:

"We are satisfied that what the complaint in this allegation describes is not a purchase and sale of a given quantity of blood, but a furnishing of blood for what is referred to in the complaint as 'a routine transfusion * * * to promote the healing of the surgery' incidental to the contract of service between the hospital district and the patient."

So also in Koenig v. Milwaukee Blood Center, Inc., 23 Wis.2d 324, 127 N.W.2d 50 (1964), the identical conclusion was reached, the Wisconsin Court noting:

" * * * Even though there may be a specific and separate charge for a blood transfusion it is not a sale but a part of an overall service. The acts of the hospital being a service and not a sale do not give rise to an action for breach of implied warranty." 127 N.W.2d 50, at 53.

See also the decision of the Supreme Court of Utah in Dibblee, Administrator v. Dr. W. H. Groves Latter-Day Saints Hospital, 12 Utah 2d 241, 364 P.2d 1085, and see the decision of the Sixth Circuit in Merck and Company v. Kidd, 242 F.2d 592 (1957).

The Colorado Supreme Court has not ruled on the particular subject and there are no decisions which suggest that that court would reach a decision contrary to the majority viewpoint as indicated by the cases which are cited above.

Concluding, as we do, that the reasoning of the Perlmutter case, namely, that the predominant character of the blood transfusion is service and not a sale, it is unnecessary to consider or discuss the policy aspects which are mentioned in the Perlmutter case and in some of the other decisions.

It is concluded that the motion to dismiss the first claim should be granted.

## II.

### *The Negligence Contention*

At the conclusion of the oral arguments in this case it was indicated from the bench that the negligence claim is unimpressive in that it alleges that there was a duty on the part of the hospital authorities to warn the plaintiff that transfusions are a part of operative procedures and that serum hepatitis may result from the transfusion.

█ Whether there was such a duty and the identity of the hospital employee who is required to give this warning, and whether the plaintiff would have refused the surgery under these conditions is extremely doubtful; nevertheless, the Court is of the opinion that the motion to dismiss the second claim is premature. The parties are now pursuing discovery and the nature and extent of the plaintiff's claim based upon fault can be examined much more perceptively once the facts relied on are brought to the surface. In view of this the Court is not disposed to dismiss the plaintiff's second claim at this time.

The defendant has alleged that some fault exists and the Court must at this juncture assume the ability of the plaintiff to prove that the hospital was at fault. Whether there was negligence remains to be seen. It is therefore,

Ordered that the defendant's motion to dismiss the first claim be granted; it is

Further ordered that the defendant's motion to dismiss the second claim be, and the same is hereby denied without prejudice to the defendant to renew this motion.